## UNITED STATE DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Ronald Leone, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| The Fusco Corporation | : | |
| Defendant. | : | August 11, 2011 |
| | : | |

### COMPLAINT

I.  **Jurisdiction and Parties**

1.      This is an action for damages brought pursuant to the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq; Connecticut General Statutes, C.G.S. §31- 290a and state common law claims for breach of contract and promissory estoppel.  The action seeks a declaratory judgment that Defendant's actions violated the Plaintiff's legal and statutory rights, monetary damages and attorneys' fees and costs.

2.      Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1367 because the Plaintiff is alleging a federal statutory claim and this court has supplemental jurisdiction to hear the state law claims in that they related to and part of the same case and controversy as the federal claim.

3.      Venue in this district is appropriate pursuant to 28 U.S.C. §1391, because this is the district in which the Defendant resides and in which the cause of action arose.

4.      Plaintiff Ronald Leone is a citizen of the United States, actually residing in Durham, Connecticut.  At all times relevant to this complaint, the Plaintiff was an employee of the Defendant, as that term is defined within 29 U.S.C. § 2611 and C.G.S. §31- 275.

5.    Defendant, The Fusco Corporation (hereinafter Defendant or Fusco), is a Connecticut corporation with its headquarters and principal place of business located at 555 Long Wharf Drive, New Haven, Connecticut 06511.   The Defendant, on information and belief, employs over fifty (50) employees.

II.   **Facts**

6.    The Plaintiff worked for the Defendant corporation as a project superintendent for fourteen years, from 1997 until his termination on February 11, 2011. The Defendant's principal business activity is as a construction general contractor.

7.     In April, 2010, the Plaintiff was overseeing the Metro Business Academy project in New Haven, CT for the Defendant when he was informed by Joe Merhill, the Defendant's General Superintendent that Fusco was bidding on a large federal construction project in Puerto Rico and that he and the Defendant's president, Lynn Fusco, want the Plaintiff to go to Puerto Rico to run the project.

8.    The Plaintiff was reluctant to relocate to Puerto Rico but told Merhill he would consider doing so.

9.    In early May, 2010, after finishing the Metro Business Academy project, the Plaintiff was sent by the Defendant to Niantic, CT to oversee one of its projects at the Connecticut National Guard facility, Camp Rell.

10.    In early June, 2011, the Plaintiff received a telephone call from Lynn Fusco informing him that the Defendant was awarded the Puerto Rico project and asked him to come to a meeting with her and Greg Phasil, a project executive, to discuss the project and his role, if any, in it.

2

11.     The Plaintiff met with Ms. Fusco and Phasil and again expressed his reluctance to leave Connecticut and relocate to Puerto Rico for a long-term project. Lynn Fusco told the Plaintiff that if he went to begin the project and did not like it in Puerto Rico he could always come back to work for the Defendant in Connecticut.  She then told the Plaintiff that he would just need to give the company time to find a replacement.  Based on these assurances, the Plaintiff agreed to try it and start the project in Puerto Rico.

12.     Following the conclusion of that meeting, the Plaintiff received an email communication from Lynn Fusco, memorializing their earlier conversation.  In that email, Lynn Fusco stated, *inter alia,* the following: "I wanted to let you know that I am VERY grateful that you are going to PR.  I feel more relaxed that someone so trusted will be looking out for the Company on this project.  You are treasured.  Do NOT worry – if you do not like it there you can always come home to Ct.  Just give me enough time to find someone else.  BUT don't ever worry – you are with us for life!!  Call me if you see any weird shit going on…Best Wishes, xoxoxo  Lynn R. Fusco. President."

13.     Based on the promises and assurances made in the meeting with Lynn Fusco and Greg Phasil and the email from Lynn Fusco, the Plaintiff agreed to go oversee the project in Puerto Rico and relocated to San Juan in late June, 2010.

14.     In addition to providing the Plaintiff with housing in San Juan, the Defendant also agreed that the Plaintiff would be permitted to return to Connecticut every three weeks for a long week-end while the project was ongoing in San Juan.

15.     The job in Puerto Rico, remodeling of the federal district court house for the General Services Administration, was both physically and mentally stressful for the

3

Plaintiff.  Construction work was scheduled as night work from approximately 5 pm until 3 am.   Following the end of work each morning, the Plaintiff would spend several more hours in the construction office reviewing drawings, emails, invoices and meeting with subcontractors.  There was no air conditioning at the construction site and the Plaintiff found the heat and humidity unbearable.  He developed a serious heat rash which he treated with both over the counter remedies as well as seeking treatment from a local physician.

16.     In late July or early August, 2010, the Plaintiff injured his knee on the construction site.  The knee continued to bother the Plaintiff and in early September, 2010 he sought treatment and had x-rays taken by a local physician.  The physician told him that he had a stretched tendon in his left knee and would need to wear a full leg brace for six or eight weeks to keep his knee from bending while it healed.  The Plaintiff complied with the medical order and wore the brace but requested a letter from the doctor indicating that he could still continue to work during his recovery.  The Plaintiff lost two days of work as a result of the injury.

17.     Following the diagnosis from the physician, the Plaintiff discussed the issue with Linda Lemire in the Defendant's human resources office who told him that the office would process a worker compensation claim for him because it was a work related injury.

18.     In September, 2010, Lynn Fusco and other executives with the Defendant visited the project site in Puerto Rico for several days.  During the visit the Plaintiff informed Ms. Fusco that he did not want to continue overseeing the project in Puerto Rico and discussed with her the stressful working conditions, his extensive heat rash

and his injury to his knee.  The Plaintiff informed Ms. Fusco that he was willing to remain in Puerto Rico before returning to another assignment in Connecticut until the end of December when the first phase of the project was scheduled to be completed. During this conversation Ms. Fusco mentioned the names of several individuals who the Defendant might send to Puerto Rico to replace the Plaintiff as the project superintendent.

19.     Following that meeting the Plaintiff was informed by various managers, including Greg Phasil, that as soon as the Defendant could locate a replacement, and if that replacement liked the job, that would the Plaintiff's "ticket home."   In early October, 2010, the Plaintiff was told that another superintendent, Frank D'Angelis, would be coming to Puerto Rico before the end of the year to replace him, eventually, on the project.  Mr. D'Angelis did arrive in Puerto Rico on or about November 1, 2010 and began to orient himself with respect to the project the Plaintiff was then overseeing for the Defendant.

20.     In October, 2010, the Plaintiff was scheduled to fly back to Connecticut for a long weekend.  While back in Connecticut, the Plaintiff also met with Lynn Fusco and the Defendant's CFO, Dennis Reilly.  Ms. Fusco started the meeting by stating that Mr. Reilly was present to be a witness to the fact that the Plaintiff was quitting.  The Plaintiff told Ms. Fusco and Mr. Reilly that he was not quitting and that he was under the impression, from all of his conversations with Mr. Phasil and other executives that the Defendant was actively trying to find a replacement for the Plaintiff so he could return to work for the Defendant in Connecticut.  The Plaintiff also reminded Ms. Fusco that she had promised him, when he agreed to take the job, that if he didn't like the project he

5

could return to Connecticut.  The Plaintiff also told Ms. Fusco that despite the physical and mental stress of the project he was committed to remaining there until the first phases was completed in December or January and a replacement could be found.

21.     During this meeting Ms. Fusco became quite angry and told the Plaintiff that she was very upset that he had filed a worker compensation claim.  She further read aloud from an email she had received from Joe Merhill summarizing his conversations with the Plaintiff indicating that the job was physically and mentally stressful to the Plaintiff.  After reading the email, Ms. Fusco told the Plaintiff that she did not care about his physical or mental issues, his leg or his heat rash and that the only thing she cared about was the project in Puerto Rico.   In this meeting, Ms. Fusco also brought up issues from the past on other projects as criticism of the Plaintiff's performance and derided his computer skills.  This was the first time that Ms. Fusco, or any other employee of the Defendant had ever spoken with the Plaintiff about any of these issues.

22.     Over the Thanksgiving holiday in 2010, the Plaintiff returned to Connecticut.  He had previously arranged to have his annual medical examination while he was home.  During that examination his doctor noticed an abnormality in his bladder and referred him to an urologist.  Because he was scheduled to return to Puerto Rico, the Plaintiff arranged to see the specialist over the Christmas holiday when he was next expected to be back in Connecticut.

23.     The Plaintiff subsequently met with the urologist in December, 2010 who performed a cystoscopy and informed him, that day, that he had a tumor on the bladder which needed to be surgically removed.  The surgeon wanted to schedule the operation

on January 21, 2011 but the Plaintiff postponed it until after January 31, 2011 because he wanted to return to Puerto Rico to complete work on the first phase of the project in San Juan prior to the operation.

24.    The Plaintiff informed the Defendant that he would need to be out one week prior to his surgery on February 4, 2011.  The Plaintiff further informed the Defendant that his surgeon indicated that he would be released to return to work after the surgery, barring any complications, on February 14, 2011.  The Plaintiff's last day of work on the project in Puerto Rico was January 28, 2011.

25.    The Plaintiff's surgery was performed on February 4, 2011.  On Monday February 7, 2011, he returned to the hospital to meet with his doctors and learn the results of the biopsy.  He was told that the tumor was malignant and that there was a 40% chance for the cancer to reoccur.  Because the entire tumor had been removed the Plaintiff was told that he would not need to have chemotherapy or radiation treatments at that time.  The Plaintiff was also told by his doctors that he could return to work to work the following Monday, February 14, 2011.  His doctors further told him that his only restriction upon returning to work was to avoid lifting until his incision completely healed.

26.    On February 7 or February 8, 2011, the Plaintiff emailed Ms. Fusco, on his company Blackberry, to tell her that the results of the biopsy showed that he had bladder cancer but that he would be released for work and able to return on Monday February 14, 2011 with some minor restrictions on lifting.

27.    On Friday February 11, 2011, the Plaintiff received a telephone call from Joe Merhill telling him that he was being laid-off.  Merhill further instructed the Plaintiff to return his company truck, his Blackberry, his computer, his gas cards and his entry

cards on Monday morning, February 14, 2011.

28.    On Monday February 14, 2011, the Plaintiff returned all of the company property in his possession.  He was told that day by Ms. Fusco, that the Defendant had no other projects on which it could place him.  On information and belief, this was not true.

## COUNT ONE- Family Medical Leave Act – 29 U.S.C. §§ 2601 et seq

1.    The Plaintiff repeats re-alleges and incorporates paragraphs 1-28, above.

29.    The Plaintiff exercised his right under the Family Medical Leave Act to take time off from work because of a serious medical condition.

30.    The Plaintiff informed the Defendant that he would be absent from work for his cancer surgery from January 31, 2011 until February 14, 2011 when he would released with a minor lifting restriction.

31.    On February 11, 2011, the Defendant terminated the Plaintiff's employment while on FMLA leave.

32.    As a result of the termination, the Plaintiff was not restored to the position of project superintendent or to an equivalent position at the expiration of his medical leave of absence.

33.    By the acts described above, the Defendant has interfered with the Plaintiff's exercise of his rights under the FMLA.

34.    By the acts described above, the Defendant has discriminated against the Plaintiff for the exercise of his rights under the FMLA.

35.    As a result of the Defendants acts, as described above, the Plaintiff has suffered and continues to suffer damages in the way of lost salary, compensation,

8

benefits, loss of career opportunities and other rights and privileges of employment.

## COUNT TWO – Worker Compensation Discrimination - C.G.S. §31- 290a

1.    Plaintiff repeats, re-alleges, and incorporates herein by reference paragraphs 1-35, above.

36.    The Plaintiff filed a worker compensation claim in August, 2010 for injuries to his knee sustained while working on a job for the Defendant.

37.    In October, 2010 the Defendant, through its president, chastised the Plaintiff for filing a worker compensation claim because of the injury to his knee.

38.    On February 11, 2011, the Defendant terminated the Plaintiff's employment while he was on FMLA leave for cancer surgery.

39.    The Defendant terminated the Plaintiff's employment in whole, or in part, because he had exercised his right to file a claim for worker compensation benefits and report a worker compensation injury.

40.    The Defendant engaged in the discriminatory conduct against the Plaintiff knowingly and in disregard of his statutory rights.

41.    As a result of the Defendant acts, as described above, the Plaintiff has suffered and continues to suffer damages in the way of lost salary, compensation, benefits, loss of career opportunities and other rights and privileges of employment.

## COUNT THREE – BREACH OF CONTRACT

1.    The Plaintiff repeats re-alleges and incorporates paragraphs 1-41, above

42.    In June, 2010 the Defendant promised to provide the Plaintiff with secure employment in exchange for his promise to work for them overseeing a construction project in San Juan, Puerto Rico.

9

43.     The Plaintiff performed his promise and provided the oversight management work on behalf of the Defendant in Puerto Rico beginning in June, 2010.

44.     The contract between the Plaintiff and the Defendant provided that the Plaintiff could return to employment with the Defendant in Connecticut if he did not like the work in Puerto Rico subject only to the limitation that the Defendant needed time to find a suitable replacement.

45.     In September, 2010, the Plaintiff informed the Defendant that he did not wish to remain working on the project in Puerto Rico and wanted to return to employment with the Defendant in Connecticut as soon as a replacement could be found.

46.     The Defendants assigned a replacement superintendent for the Puerto Rico project by November 1, 2010.  the Plaintiff continued to work for the Defendant on the Puerto Rico project until January 28, 2011 when he returned to Connecticut.

47.     On February 11, 2011, rather than assign the Plaintiff to work for the Defendant in Connecticut, the Defendant terminated the Plaintiff's employment.

48.     As a result of the Defendant's acts, as described above, the Defendant breeched its contract with the Plaintiff to provide him with secure employment.

49.     As a result of the Defendant's breech of contract, the Plaintiff has suffered and continues to suffer damages in the way of lost salary, compensation, benefits, loss of career opportunities and other rights and privileges of employment.

## COUNT FOUR – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

1.     The Plaintiff repeats re-alleges and incorporates paragraphs 1-49, above.

50.     The contract between the Defendant and the Plaintiff included a covenant

10

of good faith and fair dealing.

51.     By failing to abide by its contractual commitment to provide the Plaintiff with secure employment, as described above, the Defendant breached its implied covenant of good faith and fair dealing.

52.     As a result of the Defendant's breach of implied covenant of good faith and fair dealing, the Plaintiff has suffered and continues to suffer damages in the way of lost salary, compensation, benefits and other rights and privileges of employment, loss of career opportunities, as well as pain and suffering, anxiety, humiliation and severe emotional distress.

## COUNT FIVE – PROMISSORY ESTOPPEL

1.     The Plaintiff repeats re-alleges and incorporates paragraphs 1-52, above.

53.     In June, 2010, the Defendant made a clear and definite promise to the Plaintiff that it would provide him with secure employment if he undertook an assignment for the Defendant in Puerto Rico.

54.     The Plaintiff relied on this clear and definite promise when he agreed to undertake the assignment in Puerto Rico.

55.     The Defendant reasonably expected such a promise to induce the Plaintiff to undertake the assignment.

56.     The Defendant failed the provide the Plaintiff with secure employment and, instead, terminated him.

57.     The Plaintiff detrimentally relied on the Defendant's promise.

58.     As a result of the Plaintiff's detrimental reliance on the Defendant's clear and definite promise, he has suffered and continues to suffer damages in the way of lost

11

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury on all counts of the complaint.

RESPECTFULLY SUBMITTED,
THE PLAINTIFF,

By: _____

Henry F. Murray ct17234
Thomas W. Meiklejohn ct08755
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821

13